UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CRYSTALLE FOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-02936-JPH-MPB |
| | ) |
| RESOLUTE ACQUISITION CORPORATION, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Crystalle Foy worked for Resolute Acquisition Corporation, Inc. ("Resolute") providing direct care for adolescent residents. Resolute terminated her employment after she was involved in breaking up a fight between residents. Ms. Foy alleges that she was denied a promotion because of her gender and terminated because of her sexual orientation. Resolute has filed a motion for summary judgment. Dkt. [48]. For the reasons below, that motion is **DENIED** with respect to Ms. Foy's gender-discrimination and sexual-orientation-discrimination claims and **GRANTED** with respect to the abandoned race-discrimination and unpaid-wage claims.

**I.
Facts and Background**

Because Resolute has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-

moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).[1]

### A. Ms. Foy's employment with Resolute

Resolute—a full-service mental health facility—provided "residential treatment programs for adolescent males suffering from psychiatric and behavioral issues." Dkt. 49-1 at 1 (Taylor Aff.). Ms. Foy began working for Resolute in March 2017 as a direct-care staff member. *Id.*; *see* dkt 52-1 at 40–43 (Foy Dep.). Ms. Foy is homosexual. Dkt. 52-2 at 1 (Brown Aff.).

In July 2017, Resolute's Director of Nursing Blair Hanni announced in a shift meeting that a supervisor position was available. Dkt. 52-1 at 106–07 (Foy Dep.). He told employees to turn in a resume to him to apply. *Id.* at 110–11. The job was also posted by the employees' time clock. *Id.* at 110. The next day, Ms. Foy turned in a resume. *Id.* at 111. Less than a week later, she asked Mr. Hanni if the position was still available and he answered yes, but that "he was looking for a male for the position." *Id.* at 111–12. Ms. Foy was not promoted and Resolute did not fill the position. *Id.* at 116.

### B. Ms. Foy's termination

In August 2017, two residents got into a fight after an outdoor game. *Id.* at 118–20, 130. Ms. Foy separated them and worked with other staff to deescalate the situation. *Id.* at 121–22. She and one of the residents tripped

---

[1] Resolute argues that the Court "should deem the facts set forth by Resolute as undisputed" because Ms. Foy "failed to include a statement of material facts in dispute." Dkt. 56 at 8. But Ms. Foy provided fifteen pages of factual allegations with specific record citations, including three pages of clear factual allegations under the heading "Additional Disputes to Defendant's Facts." Dkt. 51 at 1–15.

over each other's feet and fell. *Id.* at 123–24. Other staff then restrained the resident, and Ms. Foy was able to calm him down. *Id.* at 124–26. Ms. Foy did not place the resident in a hold. *Id.* at 125.

The next day, Resolute told Ms. Foy that she was being terminated because she placed the resident in an illegal hold. *Id.* at 135–37. Resolute also terminated Ms. Foy's supervisor, Richard Carter, who is homosexual; Resolute did not terminate other employees involved in deescalating the fight. *Id.* at 67, 216.

### C. Procedural History

Ms. Foy brought this lawsuit alleging that she was: (1) not paid overtime in violation of the Fair Labor Standards Act ("FLSA"); (2) not promoted to supervisor because of her gender in violation of Title VII; and (3) terminated because of her race, national origin, and sexual orientation in violation of Title VII. Dkt. 16. Resolute filed a motion to dismiss, which the Court granted on Ms. Foy's national-origin-discrimination claim but otherwise denied. Dkt. 44 (granting in part dkt. 20).

Resolute moved for summary judgment on the remaining claims. Dkt. 48. In response, Ms. Foy withdrew her FLSA and race-discrimination claims, dkt. 51 at 1, so Resolute is entitled to judgment on those claims, *see Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008). The parties dispute whether there is a triable issue of fact on Ms. Foy's gender-discrimination and sexual-orientation-discrimination claims.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

### A. Failure to promote because of sex

Title VII prohibits employers from discriminating against their employees because of their sex. 42 U.S.C. § 2000e-2(a)(1). Resolute moves for summary judgment on Ms. Foy's claim that Resolute did not promote her because she is female. Dkt. 48. Ms. Foy has designated evidence that she and other staff were invited at a shift meeting to apply to be a supervisor, and that she followed the instructions to do so. Dkt. 52-1 at 106, 110–11 (Foy Dep.). Less than a week after applying, she asked Mr. Hanni, the Director of Nursing, if the

4

position was still available and was told "yes" but that he "was looking for a male for the position." *Id.* at 111–12.  That is enough to show a triable issue of fact on discrimination.  *See LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356 (7th Cir. 2019) ("Unmistakable evidence of [discrimination] . . . makes for simple analysis.").

Nevertheless, Resolute argues that it's entitled to summary judgment because Ms. Foy's disciplinary history and short tenure made her ineligible for the promotion, and because she did not apply to be a supervisor.  Dkt. 50 at 9–12.  Ms. Foy responds that she was invited to apply and followed Resolute's application instructions.  Dkt. 51 at 17.

Ms. Foy has designated evidence allowing a reasonable jury to find that she applied for the position and that Resolute did not consider her ineligible. Resolute told her at a staff meeting that it was looking for "anybody that was willing to step up for the position" and to apply by submitting a resume to Mr. Hanni.  Dkt. 52-1 at 106–07, 110 (Foy Dep.).  The job was also posted by the employee time clock, but no minimum qualifications were listed.  *Id.* at 110. After Ms. Foy applied, she asked Mr. Hanni about her application.  *Id.* at 112. He did not tell her that her application was incomplete or that she wasn't qualified, but that he was looking for a male.  *Id.*

Ms. Foy has therefore designated evidence "that supports an inference of intentional discrimination."  *Joll v. Valparaiso Comm. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020).  Resolute disputes that evidence and contends that Ms. Foy cannot prevail because she did not qualify to be a supervisor under Resolute's

5

policies. But a reasonable jury could find that Resolute did not follow those policies for this specific position, so there is a triable issue of fact that a jury must resolve.[2]

### B. Termination based on sexual orientation

"An employer who fires an individual merely for being gay or transgender defies [Title VII]." *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1754 (2020). Resolute moves for summary judgment on Ms. Foy's claim that she was terminated because of her sexual orientation. Dkt. 48.

#### 1. Resolute's knowledge of Ms. Foy's sexual orientation

Resolute argues that it is entitled to summary judgment because it did not know Ms. Foy's sexual orientation. Dkt. 56 at 12–13. Ms. Foy responds by designating an affidavit from one of Ms. Foy's shift supervisors, Nakia Brown, saying that it "was well known throughout the facility that [she was] homosexual" and that she "wears male clothing . . .[,] has very masculine mannerisms, and often spoke about her girlfriend." Dkt. 51 at 1 (citing dkt. 52-2 at 1 (Brown Aff.)).

Resolute contends that Ms. Brown's affidavit is inadmissible because it was not produced in discovery under Federal Rule of Civil Procedure 26. Dkt. 56 at 4. Under Rule 26(a)(1)(A)(i), Ms. Foy was required to identify "individual[s] likely to have discoverable information," and Ms. Foy identified Ms. Brown as a "[p]otential witness [who] may speak to replacing Plaintiff."

---

[2] Because summary judgment is inappropriate for these reasons, the Court does not address the parties' arguments on whether this claim can also proceed under the *McDonnell Douglas* framework.

6

Dkt. 55-1 at 2. While Ms. Foy arguably submitted Ms. Brown's affidavit for a different purpose—to show Resolute's knowledge of its employees' sexual orientations—the cases that Resolute cites are distinguishable and do not compel exclusion here. *See* dkt. 56 at 4–5; *Dynegy Mktg. & Trade v. Multuit Corp.*, 648 F.3d 506, 513–14 (7th Cir. 2011) (exclusion of a declaration about damages calculations due to "continued dilatory and opaque behavior"); *Mannoia v. Farrow*, 476 F.3d 453, 456–57 (7th Cir. 2007) (exclusion of an expert who was not identified until after the close of discovery).

Ms. Foy identified Ms. Brown in her initial Rule 26(a) disclosures, dkt. 55-1 at 2, and during her deposition discussed Ms. Brown's role as one of her supervisors, dkt. 52-1 at 117 (Foy Dep.). While Resolute therefore knew Ms. Brown's role as a potential witness, it did not take her deposition during discovery. To the extent Resolute was surprised when Ms. Foy filed the affidavit after discovery had closed, it could have moved to reopen discovery to take Ms. Brown's deposition. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). Moreover, any potential prejudice can be cured before trial.[3] *See id.* Finally, the likelihood that trial would be disrupted is low, and there is no evidence of bad faith. *See id.* at 856–58 (listing the factors that guide district court discretion). The circumstances here do not warrant exclusion of Ms. Brown's affidavit. *See id.*; *cf. Steffek v. Client Servs., Inc.*, 948 F.3d 761, 768 (7th Cir. 2020).

---

[3] Resolute may ask for additional time to depose Ms. Brown if it believes it would be unfairly prejudiced at trial. *See Steffek v. Client Servs., Inc.*, 948 F.3d 761, 768 (7th Cir. 2020).

7

Resolute next argues that Ms. Brown's affidavit is not based on personal knowledge but is inappropriately based on gender stereotypes. Dkt. 56 at 5. In the affidavit, Ms. Brown testifies that she began working at Resolute in 2011, and supervised Ms. Foy after becoming a Shift Supervisor in 2016. Dkt. 52-2 at 1 ¶¶ 3–5. This is ample foundation for Ms. Brown to testify based on her personal knowledge about Ms. Foy's appearance and mannerisms, and that Ms. Foy "often spoke about her girlfriend." *Id.* at 1 ¶ 8. It is also sufficient foundation for Ms. Brown's testimony that it "was well known throughout the facility" that "Ms. Foy [was] homosexual," and that "[m]anagement and the residents knew that Mr. Carter and Ms. Foy were homosexual." *Id.* at 1 ¶¶ 7–9; Fed. R. Evid. 602; 701.

Resolute further argues that it is entitled to summary judgment because its Director of Risk Management, Janna Young, testified that she did not know Ms. Foy's sexual orientation. Dkt. 50 at 8 (citing dkt. 49-4 at 30–31 (Young Dep. at 64–65)). But on summary judgment, the Court must draw all reasonable inferences in Ms. Foy's favor. *Zerante*, 555 F.3d at 584. A reasonable jury could find that Resolute knew Ms. Foy's sexual orientation, or that it did not, so summary judgment is not appropriate on this basis. *See Griffin v. Sisters of Saint Francis*, 489 F.3d 838, 844 (7th Cir. 2007).

### 2. *McDonnell Douglas* framework

At this summary judgment stage, Ms. Foy proceeds under only the *McDonnell Douglas* burden-shifting framework. Dkt. 51 at 22; *see Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020) ("One method a plaintiff may

8

utilize to present [evidence of discrimination] is the *McDonnell Douglas* framework.").[4]  Under this framework, Ms. Foy must show a *prima facie* case with "evidence that (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably."  *Tyburski*, 964 F.3d at 598.

"If the plaintiff meets each element of her *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual."  *Id.*  Finally, if "the employee has cast doubt upon the employer's proffered reasons for the termination, the issue of whether the employer discriminated against the plaintiff is to be determined by the jury—not the court."  *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005).

### a. Ms. Foy's *prima facie* case

Resolute argues that Ms. Foy has not met her *prima facie* case under *McDonnell Douglas* because she has not identified any comparators and was not meeting Resolute's legitimate expectations.  Dkt. 56 at 12–15.

---

[4] Ms. Foy calls this the "indirect method," dkt. 51 at 22, but the Seventh Circuit has rejected that label as "unhelpful," *Ortiz v. Warner Enters., Inc.*, 834 F.3d 760, 764-66 (7th Cir. 2016).  However, the *McDonnell Douglas* framework "has not been displaced" and plaintiffs may rely on it alone at summary judgment.  *Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019); *see Joll*, 953 F.3d at 928–29.

### 1. Comparators

To be comparators under *McDonnell Douglas*, employees must be "similarly situated." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). "Similarly situated employees must be 'directly comparable' to the plaintiff 'in all material respects,' but they need not be identical in every conceivable way." *Id.* "Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Id.* at 846–47 (quotation omitted).

Resolute argues that Ms. Foy is not similarly situated to other employees who tried to deescalate the residents' fight because she was the only one reported for using excessive force. Dkt. 56 at 13. Ms. Foy has designated evidence that five employees, including herself, were involved in breaking up the fight between the residents. Dkt. 52-1 at 124 (Foy Dep.). One of the residents reported to Resolute that "five staff members piled on top of him," and Ms. Young testified that she recommended Ms. Foy's termination because she used excessive force in that encounter. *See* dkt. 49-4 at 5, 23, 32 (Young Dep. at 8, 38, 66). The common role in using physical force to break up the physical altercation allows Ms. Foy to use these former co-workers as comparators. *See de Lima Silva v. Dept. of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019) ("The critical question is whether the employees have engaged in conduct of comparable seriousness."). Ms. Foy was summarily terminated for her

alleged use of excessive force while the alleged comparators were not terminated. Dkt. 52-1 at 216 (Foy Dep.).

While one of Resolute's managers reported only Ms. Foy for using excessive force, the other employees who were involved in breaking up the fight can still be comparators. The similarly situated inquiry is "flexible" and focuses more on the employees' conduct than on tangential reports about that conduct. *Coleman*, 667 F.3d at 846, 851 n.4 ("The similarly-situated inquiry is about whether employees are *objectively* comparable" rather than "the employer's *subjective* motivations."). What the employer heard and how it reacted are more "relevant . . . at the pretext stage, not for the plaintiff's *prima facie* case." *Id.* And, even if the employer's belief were relevant at this stage, Resolute does not explain why it did not consider the resident saying that "five staff members piled on top of him" to be a report of excessive force. Dkt. 49-4 at 23 (Young Dep. at 38). A reasonable jury could therefore infer that the conduct was objectively similar and that the other employees are similarly situated. *See Coleman*, 667 F.3d at 850–51.

Resolute also argues that Ms. Foy relies on impermissible stereotyping, rather than admissible evidence, to show that three of the employees involved were heterosexual. Dkt. 56 at 13–14. But Ms. Foy has designated evidence that Ms. Brown, a former Resolute supervisor, believed that two of those employees "appeared to be traditionally heterosexual." Dkt. 52-2 at 2 (Brown Aff.). That is enough to create an issue of fact about whether Resolute knew the employees' sexual orientation. *See Griffin*, 489 F.3d at 844 (noting an issue

11

of fact about the employer's knowledge of a pregnancy when "it [was] possible that [the] pregnancy was visible"). Indeed, the *McDonnell Douglas* framework is not "rigid, mechanized, or ritualistic" about the precise type of evidence required. *Coleman*, 667 F.3d at 846.

Resolute does not challenge Ms. Foy's evidence of comparators on any other basis, *see* dkt. 50 at 17–20; dkt. 56 at 13–14, so Ms. Foy has satisfied this element of her *prima facie* case.

### 2. Legitimate expectations

Resolute argues that Ms. Foy was not meeting its legitimate expectations because she used excessive force. Dkt. 50 at 16; dkt. 56 at 14–15. Ms. Foy does not dispute that Resolute may legitimately fire employees for using excessive force, but denies that she used excessive force when she broke up the altercation. Dkt. 51 at 22–24; dkt. 52-1 at 125 (Foy Dep.). Viewing the evidence in the light most favorable to Ms. Foy, a reasonable jury could find that Ms. Foy did not use excessive force—especially when compared to other similarly situated employees—and that she therefore was meeting Resolute's legitimate expectations.[5]

### b. Pretext

Because Ms. Foy has met her *prima facie* case under the *McDonnell Douglas* framework, the burden shifts to Resolute to articulate a legitimate, nondiscriminatory reason for Ms. Foy's termination. *See Tyburski*, 964 F.3d at

---

[5] Resolute does not dispute the other elements of Ms. Foy's *prima facie* case—that she is a member of a protected class and that she suffered an adverse employment action.

12

598. Resolute has designated evidence that it believed that Ms. Foy used excessive force on a resident. Dkt. 49-4 at 32 (Young Dep. at 66). The burden therefore shifts back to Ms. Foy to show that the employer's explanation is pretextual. *See Tyburski*, 964 F.3d at 598.

"To meet this burden, [Ms. Foy] must 'identify such weaknesses, implausibilities, inconsistencies, or contradictions' in [Resolute's] asserted reason 'that a reasonable person could find [it] unworthy of credence.'" *Coleman*, 667 F.3d at 852. "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *Id.* Resolute argues that Ms. Foy cannot prove pretext because Resolute honestly believed that she used excessive force. *See* dkt. 50 at 21–22; dkt. 56 at 12–15. Ms. Foy responds that there is a triable issue of fact because Resolute treated similarly situated employees differently. Dkt. 51 at 25–26.

Comparator evidence "can do 'double-duty' at both the *prima facie* and pretext stages and is "'especially relevant' at the pretext stage." *Coleman*, 667 F.3d at 841–42, 858 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). Here, as explained above, Ms. Foy has designated evidence allowing a reasonable jury to find that heterosexual employees were also physically involved in breaking up the fight yet were not terminated. Dkt. 49-4 at 23 (Young Dep. at 38) (the resident told Resolute that "five staff members piled on top of him"). That supports a triable issue of fact on pretext. *Coleman*, 667 F.3d at 841–42 ("Under our circuit precedents . . . an

13

employment discrimination plaintiff may demonstrate pretext by providing evidence that a similarly situated employee outside her protected class received more favorable treatment.").

Ms. Foy has also designated other evidence allowing a reasonable jury to find Resolute's stated reason for firing her "unworthy of credence." *Id.* at 852. Ms. Foy immediately denied using a hold on a resident and repeated that denial when Resolute told her she was being terminated. Dkt. 52-1 at 127, 137 (Foy Dep.). A supervisor, Richard Carter, witnessed the fight and also told Resolute that no hold was used. Dkt. 49-4 at 44–45. Nevertheless, Resolute terminated Ms. Foy and Mr. Carter—who are both homosexual, *see* dkt. 52-1 at 216 (Foy Dep.)—without having them complete witness statements. Dkt. 52-6 at 8 (Young Dep. at 28). Three other employees involved in the physical altercation were not interviewed until after Ms. Foy was terminated,[6] dkt. 49-4 at 41–43, even though Ms. Foy asked if she could instead be suspended while Resolute investigated, dkt. 52-1 at 138 (Foy Dep.).

There's also an issue of fact about what the resident told Resolute. A manager's incident report says he "report[ed] that Ms. Foy had him in a chokehold." Dkt. 49-4 at 40 (Ex. B). Resolute's Director of Risk Management did not mention a chokehold but testified that the resident told her that Ms. Foy "used excessive force," alongside "five staff members [who] piled on top of

---

[6] Two of those employees later told Resolute that no hold was used; the third said that Ms. Foy pinned down the resident, but not that she used a hold or chokehold. Dkt. 49-4 at 41–43.

him." *Id.* at 23 (Young Dep. at 38). The investigation report completed after Ms. Foy's termination recounts that the resident said there were "five staff piled on top of him" in a "very chaotic hold" and that he "was elbowed in the rib cage" and "had a mark on his neck from her watch." *Id.* at 44 (Ex. F).

In short, Ms. Foy has designated evidence that Resolute terminated her in the face of conflicting evidence before completing its investigation. Resolute certainly is justified in taking alleged abuse of residents seriously, and "merely pointing to an employer's shoddy investigatory efforts" is not enough to show pretext. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007). But here, there are contested facts that allow a reasonable jury to conclude that the decision to immediately terminate Ms. Foy didn't make sense. *See id.* (finding "disputed factual issues that a jury should sort out" when the employer "conducted no investigation into the veracity" of an accusation and other contested evidence supported pretext).

Ms. Foy has thus shown a triable issue of fact. *See Rudin*, 420 F.3d at 726. Of course, Ms. Foy may have used excessive force and—even if she didn't—Resolute may have terminated her because it honestly believed that she did. Resolute has designated evidence supporting both possibilities, allowing a reasonable jury to find in its favor. However, Ms. Foy's designated evidence allows the opposite, so there is a triable issue of fact that a jury must decide.

15

# IV.
# Conclusion

Defendant's motion for summary judgment is **GRANTED** on Ms. Foy's FLSA and race-discrimination claims and **DENIED** on her gender-discrimination and sexual-orientation-discrimination claims. Dkt. [48].

Magistrate Judge Brookman is asked to hold a status conference to discuss settlement and trial readiness. The Court will set this case for trial in due course.

**SO ORDERED.**

Date: 2/24/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Amber K. Boyd
AMBER K. BOYD ATTORNEY AT LAW
amber@amberboydlaw.com

Robin C. Clay
CURLIN & CLAY LAW
rclay@curlinclaylaw.com

Kierstin Jodway
WALLER LANSDEN DORTCH & DAVIS, LLP
Kierstin.Jodway@wallerlaw.com

Laurie E. Martin
HOOVER HULL TURNER LLP
lmartin@hooverhullturner.com

Mark Warfield Peters
WALLER LANSDEN DORTCH & DAVIS LLP
mark.peters@wallerlaw.com

Magistrate Judge Matthew P. Brookman